1
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDWARD NORDSTROM,

      Petitioner,

                               CASE NO. 2:09-CV-11698
v.                          JUDGE MARIANNE O. BATTANI
                               MAGISTRATE JUDGE PAUL J. KOMIVES

DEBRA SCUTT,

      Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

B.    *Factual Background Unlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . 3

C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

D.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
       1.    Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
       2.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

E.    *Improper Jury Instruction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
       1.    Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
       2.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

F.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
       1.    Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
       2.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . .13
       1.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
       2.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*****

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus; however, the Court should grant a Certificate of Appealability for two of petitioner's three claims.

II.    <u>REPORT</u>:

A.     *Procedural History*

       1.     Petitioner Edward Nordstrom is a state prisoner, currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

       2.     On August 10, 2006, petitioner was convicted of failure to stop at the scene of an accident resulting in serious impairment, MICH. COMP. LAWS § 257.617; and felonious assault, MICH. COMP. LAWS § 750.82, following a jury trial in the Oakland County Circuit Court.   On August 29, 2006, he was sentenced to a term of 5-20 years' imprisonment.

       3.     Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims: (1) insufficiency of the evidence, (2) improper jury instructions, and (3) ineffective assistance of counsel.   The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented."   *People v. Nordstrom*, No. 279709 (Mich. Ct. App. Feb. 19, 2008).

       4.     Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the Michigan Supreme Court.   The Supreme Court denied petitioner's application for leave to appeal in a standard order.   *See People v. Nordstrom*, 481 Mich. 916, 750 N.W.2d 205 (2008).

       5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of

habeas corpus on May 4, 2009.   As grounds for the writ of habeas corpus, he raises the claims

that he raised in the state courts.

        6.      Respondent filed her answer on November 13, 2009.   She contends that

petitioner's claims are without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

The evidence advanced at trial is accurately summarized in petitioner's habeas

application:

> The prosecution [showed] that [after] a physical and verbal altercation ...,
> [petitioner] drove over the legs of Philip Dushan, causing serious injury, and then
> left the scene.   The defense [claimed] that [petitioner] had no knowledge that Mr.
> Dushan was underneath his car when he drove away from the [h]ome of Daniel
> Duker, because defendant's car was stuck on a mail box and when it came [loose]
> [and he] ran over Mr. Dushan's legs, [he] had no way of knowing [he had run]
> over someone's legs.
>
> Daniel Duker was living with [petitioner's] sister, [at the] place of
> accident[;] Daniel Duker testified that he was having a barbeque at his home on
> the afternoon of April 19, 2006.   [Petitioner], who was upset because Mr. Duker
> would not let him borrow his car that day[,] appeared at the barbeque and parked
> at the end of the driveway.   Daniel Duker told [petitioner] to leave, and was
> walking him to his car when Daniel's brother threw a beer can at defendant,
> striking him in the face (T I 67-72, 79, 82-83).   Although Daniel Duker put
> [petitioner] in the car, [he] said he would return.   He backed his car out onto
> Dixie Highway, but then pulled back into the driveway, heading for David Duker
> who was standing near a mailbox (T I 85-86).   The car brushed against David
> Duker, struck the mailbox and got stuck on the mailbox.   Another guest at the
> barbeque, Philip Dushan, reached through the [driver's side] car window try to
> remove the keys from the ignition.   The car came [loose] and Philip Dushan was
> caught on the [driver's] side mirror and then pulled under the car (T I 91-93).
>
> David Duker, the brother of Daniel Duker, agreed that he threw a beer can
> that struck [petitioner] and that he had fought with [petitioner] and ended up on
> the ground with [him].   After David Duker helped put [petitioner] in his car,
> defendant backed out of the driveway, but then pulled the car forward and tried to
> run David Duker down.   The car touched David Duker and then hit the mailbox.
> When [petitioner's car] came off the mailbox[, he] backed over Philip Dushan['s]
> legs and dragged him out onto Dixie Highway, where Daniel Duker was able to

pull Philip Dushan out from under the car. Defendant kept on driving. (T II 139-144, 147-149).

According to Philip Dushan, the car was stuck ... on the mailbox, Philip Dushan dislodged the car when he leaned inside to remove the keys. As the car came [loose] from the mail box the side view mirror hit him and knocked him to the ground, his legs went underneath the car, and the car ran over both legs. He was able to stand, but then fell and saw defendant's car coming towards him. Daniel Duker was able to grab him and pull him out of the way[,] after which defendant drove away from the scene. Mr. Dushan testified that he had multiple broken bones and spent four days in the hospital. He had reconstructive surgery on one of his legs. (T II 169-171, 175-176, 180-187).

A State trooper [who] was called to the Duker home after [petitioner] left testified that the Duker brothers had been drinking, and Philip Dushan probably had been drinking as well and that [one] Duker brother had not been truthful to [the] trooper when first interview[ed], and when interview[ed] later had admitted that two of [the] witnesses had assaulted defendant at his house[.] When [the] trooper interviewed [petitioner] later that night, he observed marks on the bridge of [petitioner's] nose and his forehead, (T II 202, 210-213), as did Luther Haydon, an acquaintance who loaned [petitioner] his car that day. Mr. Haydon testified that when [petitioner] returned his car to him, the car was damaged and [petitioner] looked like he had been beaten up (T II 227).

The jury found [petitioner] guilty of two of three charged counts (T II 227), and on August 29, 2006, the court imposed [a] habitual offender sentence of 5-20 years for failure to stop at the scene off an accident resulting in serious impairment of a bodily function (ST 5).

Pet., at 15-16.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L.

No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27

(1997). Amongst other amendments, the AEDPA amended the substantive standards for

granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined

by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Sufficiency of the Evidence*

Petitioner contends that the prosecution presented insufficient evidence to establish his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version of §2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeal's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F.Supp.2d 103, 106 (D.Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also Jackson*, 443 U.S. at 324 n.16; *Mullaney v.*

*Wilbur*, 421 U.S. 684, 691 (1975). "Thus, [a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1998).

Under Michigan law, "the driver of a vehicle who knows or who has reason to know that he or she has been in an accident . . . resulting in serious impairment of a bodily function or death of a person shall immediately stop his or her vehicle at the scene of the accident . . . ." MICH. COMP. LAWS § 257.617(1). This statute "plainly contemplates finding a driver liable not only on the basis of his actual knowledge of the nature of an accident, but also on the basis of the driver's constructive knowledge- what the driver reasonably should have known given the circumstances surrounding the accident." *People v. Lang*, 250 Mich. App. 565, 576; 649 N.W.2d 102, 108 (2002). Therefore, the prosecutor does not need to prove actual knowledge of the nature of the injury, only that the driver had reason to believe that the accident resulted in a specific injury. *See id.*

2.    *Analysis*

In his habeas application, petitioner challenges the sufficiency of the evidence to convict him of failure to stop at the scene of an accident causing serious personal injury because he claims there was no evidence that he knew the victim was seriously injured. This claim has no merit.

Petitioner argues that there is no indication in the record that he heard or understood what Daniel Duker ("Mr. Duker") was saying. Petitioner further argues there was no evidence to show he had knowledge or reason to know he had run over Mr. Dushan's legs because the bump petitioner felt when running over Mr. Dushan's legs could just as well have been from the car coming off the mailbox or the car jumping the curb back onto the road. Petitioner concludes his

argument by stating there was no testimony that he knew or heard anyone say there was someone under his car because the car radio could have been on and there was no evidence proving petitioner understood that Mr. Duker was telling him Mr. Dushan was under the car. However, the prosecution was not required to provide direct evidence that he had knowledge of the serious injury. *See Lang*, 250 Mich. App. at 576, 649 N.W.2d at 108. Rather, a driver can be found guilty if the circumstances surrounding the accident show the driver *should have known* serious injury had occurred. *See id.*

Here, the circumstantial evidence shows that petitioner had reason to know serious injury had occurred after the accident. First, before the accident occurred, Mr. Dushan's torso was inside the driver's side window of petitioner's car. Then, he was pulled under the car when it became dislodged from the mailbox. Further, Mr. Duker testified that when Mr. Dushan was pulled under the car, he was yelling to petitioner that Mr. Dushan was under the car. Although petitioner may have thought it was the mailbox or curb that caused the bump, he had reason to know Mr. Dushan had been run over and that he was therefore involved in an accident causing serious harm to another. Further, Mr. Duker testified that petitioner stopped the car long enough for Mr. Duker to pull Mr. Dushan out from under the car after he had run over Mr. Dushan's legs and that he was yelling to petitioner that Mr. Dushan was under the car throughout this incident. This evidence was sufficient to show petitioner had reason to know he was involved in an accident causing serious impairment to another. Considering all the relevant evidence in the light most favorable to the prosecution, this Court should find that a rational jury could find beyond a reasonable doubt that petitioner had reason to know he was involved in an accident that caused serious impairment to another. Therefore, the Michigan Court of Appeals

reasonably applied the *Jackson* test and petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

F.      *Improper Jury Instruction*

      1.      *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions were undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal).  As the Supreme Court noted in *Estelle*, a court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental unfairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72-73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  Therefore, instructional errors of state law will rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

      2.      *Analysis*

Petitioner contends the trial court failed to properly instruct the jury on the element of

knowledge and, because it was critical to determining his guilt in this case that failure to instruct was fatally defective. However, this court should find petitioner is not entitled to habeas relief on this claim because he has not shown that the improper jury instruction, i.e. the trial court's failure to instruct the jury on the knowledge element of the charged offense, was harmful to his case.

In *Neder v. United States*, 527 U.S. 1 (1999), the United States Supreme Court applied harmless error review to a trial court's omission of an element of the charged offense. The Court held that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested *and* supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Neder*, 527 U.S. at 17. Therefore, the mistake must not only be uncontested, but there must be overwhelming evidence in support of the conclusion the error prejudiced the outcome of the trial. *Id.* at 19. In such cases, it must be "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* at 18.

Here, petitioner's contention that he did not have knowledge of the accident because the prosecution could not prove his state of mind at the time of the accident is irrelevant. It is sufficient that petitioner had reason to know he was involved in an accident causing serious injury to another. Mr. Dushan was pulled underneath petitioner's car on the driver's side, Mr. Duker repeatedly screamed at petitioner that Mr. Dushan was under the car and petitioner stopped long enough for Mr. Duker to remove Mr. Dushan from under the driver's side of petitioner's car. It is clear beyond a reasonable doubt that a rational jury would have found petitioner guilty.

Given the evidence present in the record, the court's failure to instruct on the knowledge element was harmless because of the overwhelming amount of evidence establishing petitioner's guilt. Therefore, this Court should conclude petitioner is not entitled to habeas relief on this claim.

G.      *Ineffective Assistance of Counsel*

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground for lack of sufficient prejudice, . . . that course should be following." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.      *Analysis*

Here, petitioner was not sufficiently prejudiced by the lack of action on the part of his counsel. As discussed above, the outcome of the case would have been no different had the knowledge instruction been given. Because counsel's lack of action did not establish a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt" about the guilt of the party, *Strickland*, 466 U.S. at 689, it would have made no difference in the outcome of the case if a proper jury instruction had been requested by counsel and given to the jury. Therefore, petitioner has not demonstrated the prejudice necessary to show his entitlement to habeas relief with respect to this claim.

F.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the

general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'"" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new

Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

This Court should conclude petitioner is not entitled to a certificate of appealability with regard to his sufficiency of the evidence claim. The record establishes and reasonable jurists would not disagree that the Michigan Court of Appeals' decision that sufficient evidence was presented at petitioner's trial to support his conviction was not objectively unreasonable. However, because reasonable jurists could differ, based on *Neder*, whether a knowledge instruction might have led the jury to acquit petitioner on this charge, this Court should conclude that petitioner is entitled to a certificate of appealability with regard to his improper jury instruction and ineffective assistance of counsel claims.

G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus; however, the Court should issue a certificate of appealability on two of his three claims.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
UNITED STATES MAGISTRATE JUDGE
Dated: 7/15/10                    PAUL J. KOMIVES

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 15, 2010.